IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MATTHEW BOROWSKI<br>6183 Hidden Canyon Rd<br>Centreville, VA 20120<br><br>and<br><br>CARIANNE BOROWSKI<br>6183 Hidden Canyon Rd<br>Centreville, VA 20120<br><br>Plaintiffs;<br><br>v.<br><br>TERESA POLINSKE, in her official<br>and individual capacities<br>Commonwealth's Attorney - Stafford County<br>P.O. Box 66<br>Stafford, VA 22555<br><br>and<br><br>STEVEN D EPPLE, in his official<br>and individual capacities<br>Stafford County Sheriff's Department<br>P.O. Box 189<br>Stafford, VA 22555<br><br>Defendants | **JURY TRIAL DEMANDED**<br><br>Cause No. 1:10CV197<br>AJT/JFA |

## COMPLAINT

COME NOW the Plaintiffs, Matthew Borowski, pro se, and Carianne Borowski, pro se, by way of Complaint against the Defendants, Steven Epple, and Teresa Polinske, and hereby state the following:

## INTRODUCTION

1. This matter is an action for money damages and injunctive relief pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985, the Fourth and Fourteenth Amendments to the Constitution of the United States, and under the law of the Commonwealth of Virginia, against Detective Steven Epple, Assistant Commonwealth's Attorney Teresa Polinske, in their individual and official capacities.

2. Plaintiffs allege that Defendants Epple and Polinske made an unreasonable search and seizure of their persons, libeled, slandered, falsely imprisoned and maliciously prosecuted them without cause.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's cause of action arising under the Constitution of the United States, 42 U.S.C. § 1983 and 42 U.S.C. § 1985. This Court has supplemental jurisdiction over Plaintiff's causes of action arising under the Virginia commonwealth law pursuant to 28

U.S.C. § 1367.

4. Venue lies in the United States District Court for the Eastern District of Virginia because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Stafford County, Virginia. 28 U.S.C. § 1391(b)(2).

5. Divisional venue is in the Alexandria Division because the events leading to the claim for relief arose in Stafford County, Virginia. E.D.Va. L.R. 3(B)(1).

## PARTIES

6. The Plaintiffs, Matthew Borowski (hereinafter "Matthew") and Carianne Borowski (hereinafter "Carianne"), are a married couple and natural persons with domicile in Fairfax County, Virginia. Matthew worked as a salesperson for computer software, a job that required international travel, and was set to begin his law school education, when the relevant events occurred. Carianne was a part-time student and held a security clearance allowing her to work in the defense contracting industry when the relevant events occurred. The plaintiffs are properly joined pursuant to Rule 20(a)(1), since the right to relief arises out of the same series of occurrences, and questions of law or fact common to both plaintiffs will arise in the action.

7. Defendant Steven Epple is a natural person and was a detective with the Stafford County Sheriff's Department when the relevant events occurred. Defendant Epple is being sued in his individual and official capacities.

8. Defendant Teresa Polinske is a natural person and was an assistant Commonwealth Attorney for Stafford County when the relevant events occurred.

Defendant Polinske is being sued in her individual and official capacities.

9. At all relevant times, Defendants Epple and Polinske acted towards the Plaintiff, Matthew Borowski, under color of statutes, ordinances, customs and usage of the Commonwealth of Virginia, Stafford County, the Stafford County Sheriff's Department and the Commonwealth Attorney's Office for Stafford County, Virginia.

## BACKGROUND

10. On or about August 14, 1999, Carianne (at the time known by her maiden name, Carianne McHale), gave birth to a son, Jacob. Jacob is not the biological offspring of Matthew Borowski.

11. On or about October 26, 1999, William and Freida McHale, the parents of Carianne, convinced Carianne into signing an adoption petition, and a custody order, granting custody of Jacob to William and Freida McHale with the assurance that Jacob would be returned to Carianne once she was financially stable. Carianne was a minor at the time of the order and, upon information and belief, under Virginia law, she must have been represented by counsel prior to the relinquishment of her parental rights. Ms. McHale was not represented by counsel and, as a result, the October 26, 1999 custody order entered by Judge Bass in Stafford Juvenile and Domestic Relations Court was rendered *void ab initio*. The adoption petition, which is all Carianne thought had ever existed, had never been completed and had been purged from the system due to inactivity. As such, Carianne McHale retained all her parental rights to her son, Jacob.

12. From 1999 to 2008, Jacob remained in the custody of Carianne McHale,

who lived at her parents' home in Stafford County, Virginia, with the exception of a relatively short period of time during which Carianne lived in an apartment by herself and frequently visited Jacob at her parents' home. Carianne met Matthew Borowski; they fell in love, and became engaged to be married, yet Carianne moved back in with her parents so she could be near Jacob. In January 2008, an argument erupted when Carianne demanded custody of Jacob because she wished to marry Matthew and start her own family; Carianne was told to move out of the house and she was only allowed to see Jacob a few times a week under the supervision of her parents.

13.  On or about March 6, 2008, Matthew and Carianne were informed by John Mell, Esq., an attorney, that the 1999 adoption order was never finalized and was purged from the Stafford County Court's system. As such, Carianne retained sole parental custody of Jacob. The Plaintiffs were informed that they could collect Jacob from William and Frieda McHale's residence, located in Stafford County, Virginia.

14.  At the same time, Carianne visited Jacob at William and Frieda McHale's residence, located in Stafford County, Virginia. During this period of time, Carianne telephoned Matthew, stating that she was considering leaving with Jacob, prompting the Plaintiff to drive to the McHale residence.

15.  Carianne attempted to leave the McHale residence with Jacob, but was stopped by William and Frieda McHale, who proceeded to grab her and Jacob, trying to take physical custody of him.

16.  Matthew, upon arrival at the McHale residence, observed the aforementioned struggle and intervened, pulling William McHale off of Carianne and restraining him. Carianne, Jacob, and Matthew then left the McHale residence.

17. William and Freida McHale contact the Stafford County Sheriff's Department regarding the aforementioned incident, with the goal of getting Jacob back, but do not want to press charges against Matthew or Carianne.

18. On March 6, 2008, Matthew is contacted by Defendant Steven Epple of the Stafford County Sheriff's Department, informing him that there are arrest warrants issued for the Plaintiff regarding the aforementioned incident. The Plaintiff stated to Defendant Epple that "this was a custody matter," that Carianne McHale had sole parental custody of her son, Jacob, according to John Mell, Esq., and that Matthew was assisting Carianne in asserting her parental rights.

19. Defendant Epple formally issued charges of child abduction, conspiracy to abduct, child abuse, assault and battery against Matthew and Carianne. Defendant Epple contacted the local media, claiming that the Matthew struck William McHale and the pair abducted Jacob, with whom Carianne had no prior relationship. Upon information and belief, Defendant Epple's report stated that Carianne lived in the McHale residence and had a personal relationship with Jacob.

20. Defendant Epple executes a search warrant on Matthew's residence, destroying Matthew's property, destroying the structural integrity of the front door, and confiscating several items from the residence.

21. Defendant Epple executes a search warrant on Carianne's vehicle, a 2004 Infiniti G35 Sedan. When the vehicle was returned to Carianne, several parts were missing and the car's body was damaged by evidence stickers that were melted onto the paint.

22. On March 9, 2008, Defendant Epple knowingly incorrectly informs William

and Freida McHale that Carianne and Matthew secured a passport for Jacob and planned on taking him out of the country. This statement was false and slanderous to Matthew and Carianne.

23. On March 10, 2008, Carianne goes to John Mell's office and contacts the Stafford County Sheriff's Department; she is arrested, denied bond and placed in a cell with two other females who are held in close confinement at the Stafford County Jail for several days. She is denied access to exercise and recreational facilities.

24. On March 11, 2008, Matthew reports to the Stafford County Sheriff's Department, is arrested, denied bond and placed in round-the-clock solitary confinement at the Stafford County Jail for several days. He is told by a jail official also named Epple, (not to be confused with Defendant Steven Epple, of the Sherriff's Office) that he is being held in solitary "due to the nature of his crime against a child". Matthew is kept in a holding cell for over 36 hours and suffers chills from hypothermia. His subsequent requests for medical treatment and vegetarian meals are ignored.

25. At the Plaintiffs' arraignment hearings, Defendant Polinske successfully argues against the granting of bond, slanderously stating that Carianne never wanted her son Jacob and that she wanted an abortion.

26. On or about March 12, 2008, Carianne is released on $20,000.00 bond upon appeal of her confinement.

27. On or about March 19, 2008, Matthew is released on $50,000.00 bond upon appeal of his confinement, but is forbidden contact with his fiancee Carianne McHale, his friend Varun Sethi who was also arrested on the same charges, Jacob McHale, William McHale and Frieda McHale. These restrictions on contact between co-

defendants were also enforced as conditions of Carianne's bond, and were requested by Defendant Polinske. The restriction on having contact with each other (co-defendants) is a violation of the constitutional right to freedom of association as guaranteed by the First Amendment (see *NAACP v. Alabama*). As a result of the restrictions, Matthew and Carianne suffered severe damage to their relationship and their emotional and physical health.

28. Upon the request of Defendant Polinske, the judge permitted Carianne to see her son Jacob only under supervision. This restriction severely damaged the parental relationship and has caused severe emotional trauma for Carianne.

29. On April 8, 2008, a hearing took place in the General District Court for Stafford County regarding the 1999 custody order. Before this hearing, Defendant Epple stated the following to Matthew's mother: "Your son [Plaintiff Borowski] messed with the wrong person. I'm going to make sure with my last drop of blood that [Plaintiff Borowski] will never go to law school."

30. At the April 8, 2008 hearing, the 1999 custody order is declared *void ab initeo*, verifying that Carianne has indeed always held sole custody of her son Jacob. Patricia Kelly, Carianne's attorney, was informed by Defendant Teresa Polinske that the charges against the Plaintiff would be dismissed if the order was declared *void ab initeo*. Defendant Epple stated to Patricia Kelly that he had spoken with Defendant Polinske prior to the hearing and had agreed to bring adult abduction charges against the Plaintiff, in retaliation for the fact that the custody order was void.

31. On or about May 6, 2008, the Plaintiffs are arraigned on adult abduction charges arising out of the altercation with the McHale's in March, 2008.

32. On June 16, 2008, a preliminary hearing took place in the General District Court for Stafford County. At this hearing, the charges of felony child abuse and child endangerment against the Plaintiffs are dismissed due to insufficient probable causes. Charges of assault and battery were dismissed by Defendant Polinske prior to the hearing. All remaining charges were certified to the grand jury.

33. On July 7, 2008, a grand jury indicted the Plaintiffs with child abduction in violation of §§18.2-47 and 18.2-10(e) of the Code of Virginia (1950), conspiracy to abduct in violation of §§18.2-22 and 18.2-10(e) of the Code of Virginia (1950), adult abduction of William McHale in violation of §§18.2-47 and 18.2-10(e) of the Code of Virginia (1950), and adult abduction of Frieda McHale in violation of §§18.2-47 and 18.2-10(e) of the Code of Virginia (1950). Defendant Epple is identified as the grand jury witness responsible for securing the indictments against the Plaintiff.

34. On July 28, 2008, William and Freida McHale meet with Defendant Polinske, stating that they want all charges dismissed against the Plaintiff and Carianne McHale. Defendant Polinske threatens William and Frieda McHale with prosecution if they do not support the Commonwealth's version of events.

35. At some point in the Fall of 2009, Carianne reported to the emergency room at INOVA Healthplex in Springfield, Virginia due to menstrual bleeding despite being in an advanced stage of pregnancy. The menstrual bleeding was caused by stress related to the prosecution's actions.

36. On January 5, 2009, Defendant Polinske brings additional charges of assault, battery, and trespassing against Matthew, citing his refusal to accept a plea agreement.

37. On January 6, 2009, William and Freida McHale again meet with Defendant Polinske, asking her to drop all charges against the Plaintiff and Carianne McHale. Defendant Epple is in attendance of this meeting. William and Frieda McHale state that this was a misunderstanding, that Matthew and Carianne were to be married, and that the Plaintiff was to begin his legal studies at George Mason University School of Law. Defendant Polinske refuses to drop the charges against the Plaintiff. Defendant Epple states the following: "I spent three days of my life, away from my family, on this case. What they [the Plaintiffs] did was a crime - GOING to your house was a crime."

38. On February 6, 2009, the Plaintiff's matriculation at George Mason University School of Law is canceled due to the charges against him; he had already successfully completed one semester and spent a large sum of money on tuition and expenses.

39. On or about March, 2009, William and Frieda McHale meet with Daniel M. Chichester, the Commonwealth Attorney for Stafford County, pleading with him to drop the charges against Matthew and Carianne. Defendant Epple and Polinske join the meeting over William and Frieda McHale's objections. Mr. Chichester informs the McHales that the charges will not be dropped.

40. On or about February or March, 2009, Defendant Polinske told Guardian Ad Litem Ellen Hagan that Carianne should not be granted custody of Jacob even though William and Freida McHale had requested such, because there was a very high probability that she would be incarcerated as a result of the criminal charges. At the time, Defendant Polinske was aware that her witnesses were hostile and wanted the case dismissed, and knew that, consequently, incarceration of Carianne was highly

improbable.

41. On April 9, 2009, a trial was held in the Circuit Court for Stafford County, Case No. CR08000822-00 & 01, CR0800831-00 & 01 and CR090000067-00 TO 03. At the conclusion of Defendant Polinske's case, Matthew Borowski's attorney, James J. Ilijevich, moved to strike the evidence, which Motion was granted by the Court. During the case, Defendant Polinske attempted to introduce facts during her questioning of witnesses, over the objection of the Plaintiff Borowski's counsel at the time. In addition, Defendant Polinske violated the law by introducing tampered evidence, namely audio recordings.

42. On April 15, 2009, all charges against Plaintiff Borowski were dismissed. A few weeks later, all charges against Plaintiff Carianne and against Varun Sethi, the other co-defendant in this matter, were nolle prossed.

43. As a direct and proximate result of the acts of the Defendants, the Plaintiffs suffered the following injuries and damages:

    a) violation of their constitutional rights under the Fourth and Fourteenth Amendments to be free from an unreasonable search and seizure of their persons;

    b) loss of physical liberty;

    c) harm to their reputations;

    d) severe mental pain, suffering, embarrassment, and anguish;

    e) several thousand dollars in attorney's fees;

    f) destruction of their personal property,

    g) physical manifestation of mental injury

h) the loss of business earnings

44. The actions of the Defendants violated the following clearly established and well settled federal constitutional rights of the Plaintiffs: freedom from the unreasonable seizure of their persons, freedom of assembly and association, freedom from the unreasonable seizure of their property

45. At all relevant times, Defendants Epple and Polinske were acting under color of law and under color of authority as police officers, prosecutors, employees and agents or servants of the County of Stafford, Virginia and as agents of the Commonwealth of Virginia.

## COUNT I

### 42 U.S.C. § 1983 - Defendants Epple and Polinske

46. Plaintiff incorporates by reference allegations 1 to 45 herein.

47. The Defendants, Steven Epple and Teresa Polinske, violated the Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution by using criminal process that was malicious and without probable cause.

48. The charges brought by Defendants Epple and Polinske were dismissed in favor of the Plaintiffs.

49. By reason of the acts of the Defendants, the Plaintiffs have been and are greatly injured via the violation of their state and federal constitutional rights, in their credit and reputation and suffered severe economic damages, such as legal expenses, destruction of property, inability to find and retain employment, and canceled law school

matriculation.

## COUNT II

### Libel - Defendant Epple

50. Plaintiff incorporates by reference allegations 1 to 49 herein.

51. At numerous times, Defendant Epple maliciously caused to be published that the Plaintiffs assaulted William and Freida McHale and abducted Jacob.

52. The matter so published was untrue, false and defamatory.

53. By reason of the publication, the Plaintiffs have been damaged in their credit and reputation and suffered severe economic damages as a result of the Defendant's actions.

## COUNT III

### Slander - Defendant Epple

54. Plaintiff incorporates by reference allegations 1 to 53 herein.

55. The words used by the Defendant Epple, when telling William and Freida McHale that Plaintiffs had acquired a passport for Jacob and intended to take him out of the country, were false and were designed to harm the reputation and endanger any good will of the Plaintiffs.

56. The words used by the Defendant were slanderous *per se* and wholly false.

57. Thereby, the Plaintiffs were injured in their reputation.

## COUNT IV

### False Imprisonment - Defendants Epple and Polinske

58. Plaintiffs incorporate by reference allegations 1 to 57 herein.

59. The aforesaid arrest, detention and imprisonment of the Plaintiffs were unlawful and without any justification, since the Defendants had no reason to detain the Plaintiffs, having been informed by Matthew Borowski of the true fact that Carianne McHale held custody of her son Jacob, yet they chose to ignore that fact and arrest the Plaintiffs based on no actual proof showing that the mother did not hold custody.

60. The acts of the Defendants as herein described were willful, wanton and without reasonable excuse.

## COUNT V

### Malicious Prosecution - Defendants Polinske, Epple

61. Plaintiff incorporates by reference allegations 1 to 60 herein.

62. The Defendant, Teresa Polinske, filed the aforementioned criminal charges against the Plaintiff stemming from the March 8, 2008 incident.

63. The criminal charges were malicious and without probable cause.

64. The criminal charges were instituted by and/or with the cooperation of Defendants Epple and Polinske

65. The charges were terminated in the Plaintiff's favor.

Wherefore, Plaintiffs requests an order of this court awarding them:

- Actual damages jointly and severally against all defendants appropriate to the proof at trial,

- Punitive damages jointly and severally against all individual defendants appropriate to the proof at trial,

- Their costs, including reasonable attorney's fees should they subsequently become represented by counsel,

- Appropriate injunctive relief to prevent future violations of civil rights or reprisals from the defendants

- Such other relief as is just.

Plaintiffs request trial by jury, pursuant to the Seventh Amendment to the Constitution of the United States.

Respectfully submitted,

*[signature]*

Matthew Borowski
*Pro Se*
6183 Hidden Canyon Rd
Centreville, VA 20120
Phone: 703-932-5648
Fax: 703-935-4564

*[signature: Carianne M. Borowski]*

Carianne Borowski
*Pro Se*
6183 Hidden Canyon Rd
Centreville, VA 20120
Phone: 703-932-5648
Fax: 703-935-4564

Dated: March 2, 2010